GILMAN vs. THE CITY OF MILWAUKEE and another.

*August 30 — September 19, 1882*

ASSESSMENTS: EMINENT DOMAIN: INJUNCTION.   *(1) Assessment of bene-
fits to lots in one ward, from condemnation of land in another.
(2) Diversion to other than public use of lands condemned, does
not render assessments void, (3) but is illegal, (4) and may be
enjoined.*

1. Under the charter of the city of Milwaukee lots situated in one
   ward may be assessed for the special benefits accruing thereto
   from the condemnation to public use of lands in another ward.
2. Where all the proceedings of condemnation of land and of assess-
   ment of benefits are complete, and the public, as well as the
   owners of the land benefited thereby, have a right to the public
   grounds so obtained, the fact that the city officers afterward divert
   these public grounds from the use intended to other uses, or
   abandon them entirely, or omit to make them suitable for the use
   intended, will not render void the assessment, or sale therefor, of
   the property benefited.
3. The officers of a city cannot lawfully divert to other uses land
   condemned for a public park, nor can they, without legislative
   authority, confer a right to do so upon others, by lease or other
   contract.
[4. *It would seem* that the owners of lots lying so near a public square
   as to be specially benefited thereby, and whose benefits have been
   assessed and paid to aid the city in procuring title to the land to
   be used for such purposes, could enjoin its diversion to other uses.]

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleges that the defendant city is a munic-
ipal corporation and that the defendant *Geilfuss* is its treas-
urer; that the plaintiff is the owner of certain lots and parcels
of land in the fourth ward of the city; that in January,
1880, a petition was presented to the common council of said
city praying that certain lands, described as block 165 in the
second ward, be taken for public use for the purpose of en-
larging a public square in said ward, and that such proceed-
ings were thereupon had upon said petition, that said block
165, in said second ward, was condemned for the public use

for the purpose of enlarging said public square; that pending said proceedings and as a part thereof, the board of public works made an assessment of benefits to the lots and parcels of land supposed to be specially benefited, and that among the benefits so assessed were assessments against the plaintiff's lots; that afterwards, in October, 1880, the defendant city abandoned the use of the land so condemned as aforesaid, and leased the same to a private corporation, known as the Milwaukee Industrial Exposition Association, for a term of fifty years, to be used for the purpose of an industrial exposition, which lease was made before the city had obtained possession of the land so condemned, and before anything had been done towards converting said land into a public square or using it for any public purpose, except the condemnation proceedings aforesaid; that said public square has, in fact, been turned over to said private corporation and the foundation of a building has already been laid thereon, and that the ground dedicated and condemned for said public square has been utterly ruined and rendered entirely useless for any of the purposes of a public square; that the assessments against the plaintiff's lots were reported to the city clerk as special taxes and were by him entered as such in the tax roll for the year 1880, and that such tax roll was made up after the city had abandoned the public use for which said block 165 was condemned; that the plaintiff's lots were sold for the non-payment of such special taxes and were bid in by the city; that the city treasurer threatens to issue certificates of such sale, which will constitute an apparent lien upon the plaintiff's lots and a cloud upon his title. An injunction is prayed for. The defendants demurred to the complaint generally, and appealed from an order overruling the demurrer.

*P. J. Somers*, City Attorney, for the appellants.

For the respondent there was a brief by *Johnson, Rietbrock & Halsey*, and oral argument by *Mr. Johnson*.

ORTON, J.   The city of Milwaukee instituted proceedings of condemnation of certain lands in the second ward of said city, for an addition to and an enlargement of the park already existing in said ward, and, towards the payment of the expenses of such condemnation, assessed certain ascertained benefits from said park to the lots of the plaintiff, lying outside but in the near vicinity of said ward.   The plaintiff prays that said assessments, and the sale of the lots therefor, be set aside as null and void, and that an injunction issue to restrain the issuing of certificates of such sale, on the two grounds: *first*, that lots outside of said ward are not liable to such assessments; and, *second*, that the city has abandoned the land so condemned, and the park so enlarged thereby, by leasing the same to the Industrial Exposition Association of said city, to be used for the purposes of such exposition for the term of fifty years.   A general demurrer to the complaint was overruled.

As to the first ground above stated it is sufficient to say that there is no limitation or restriction expressed or implied in the language used in the provisions of the city charter, relating to the condemnation of lands for such public use, of the benefits to be assessed to the lots within the ward, of the lands so condemned.   The argument that all the other provisions relating to the subject are local to the ward, has very little weight when it is considered that the park when so obtained belongs to the city, and is under city supervision and control, and open to the public use; and the argument that lots outside of the ward are too remote to bear such an assessment, is answered by the fact that it must first be ascertained and determined that such lots, by reason of their near vicinity to the same, are specially benefited by such park or public ground, and ought to be so assessed, while many lots within the ward are too remote to be so specially benefited thereby, and ought not to be so assessed.   The argument that if there is no limitation or restriction in the language of

such provisions of benefits to lots within the ward, neither is there of benefits to lots within the city, has no force when the charter limits the jurisdiction of the city, for all purposes, to certain prescribed boundaries.

To intelligently estimate the other ground of the complaint, that the city abandoned the park, and the condemnation of lands for the same, before the assessment had ripened into a special tax upon the lots of the plaintiff, what the complaint substantially charges in this respect must be understood. The language of the complaint would seem to import that the city had not completed the condemnation so as to give the right to assess such benefits before the abandonment, and the consideration for such assessments had thereby failed. If the city had not proceeded far enough to obtain title to the lands so sought to be condemned, then the lease so made was void for that reason, and there was thereby no diversion or abandonment of this public ground as charged. If the city had obtained the title, so as to be able to lease the park to the industrial exposition, then it follows that the condemnation proceedings had been completed so as to confer such title, and the consideration of the assessment of special benefits had not failed. It may be said further that before the city can " enter upon and appropriate " the property condemned to such public use according to sec. 16, subch. 6, ch. 184, Laws of 1874, the damages awarded to the owner must have been paid or tendered (or provided for in case of appeal), so that it follows that this must have been done in the present case, or the city could not have given any valid lease to the Industrial Exposition Association, so as to have caused a diversion of the park from the use for which it was intended. After the jury has determined the necessity of the condemnation, the board of public works then determines the compensation to be paid to the owners of the lands taken or damaged, and thereupon assess the same, or such proportion thereof as shall have been determined to be

chargeable to the lots and lands benefited, together with the costs of the proceedings, upon the real estate by them deemed benefited in proportion to the benefits resulting thereto from the proposed improvements. Secs. 6 and 10.

The complaint substantially charges that all these steps were taken before the lease was made, and therefore the only ground of complaint is that after the city had fully acquired the lands by condemnation for the park, and paid or tendered the full compensation therefor, and there was therefore a full and perfect consideration for the assessment complained of, the city then leased the park so enlarged for another purpose, and thereby abandoned and diverted it, and such consideration has thereby failed. This statement presupposes that the city had the right to so divert the park from its appropriate use, and that the lease was valid. It may be true, as stated in the complaint, that the lease was made before the entire proceedings to realize or collect the assessment had been consummated, but it does not thereby follow that the consideration of the assessment failed. For it is doubtless true, as stated by the learned counsel of the respondent in his brief, that, "in this case, the assessments in question rest upon a valuable consideration, as clearly as any contract ever did." Even in this view, all the consideration ever contemplated by the charter for an assessment for special benefits to other property than that taken, was complete, for the charter provides not only for such assessment, but for its payment or the sale of the property assessed in anticipation of the park improved and made useful to the public, as indicated by the language of the tenth section, "benefits resulting from the *proposed* improvement." The case here made is therefore one in which all the proceedings of condemnation, as well as of assessment of benefits, are complete, and the public, as well as the owners of the property benefited thereby, have a right to the public grounds so obtained, and the officers of the city afterwards divert

these public grounds from the use intended to other uses, or abandon them entirely, or refuse or omit to make them suitable for the use intended. Is the assessment or sale of the property so benefited thereby rendered void? If so, then if the plaintiff had paid such assessments without sale, he could recover back the money he had so paid under duress, the consideration of which payment having thus failed by an abandonment or diversion of the property so condemned and obtained to another use than that intended. In other words, the same grounds for declaring this sale void, by reason of the diversion or abandonment of the park as alleged, would have entitled the plaintiff to recover back the money in case he had paid it without sale. This is what the learned counsel for the respondent seems to have understood was decided in *Bradford v. City of Chicago*, 25 Ill., 411. In that case it is said in the opinion: "It is clear, therefore, that if the object in view should be abandoned, an action for money had and received would lie to recover back the money on the assessment."

In that case there were fatal irregularities, both in the assessment of damages and benefits, which rendered both void; but the plaintiff had paid his assessment for benefits and sued to recover back the money paid under duress, and it appeared that instead of making a new and correct assessment of damages and benefits, and proceeding to condemn the property for a street, the city delayed several years, and up to that time, to do anything further in the matter. The right of recovery in that case depended upon the fact that the assessment was irregular and void in itself, and not upon its becoming void by the abandonment of the street, and a recovery was not even allowed on account of the assessment being void, without the further fact appearing that the city had abandoned,— not the street, because no ground for a street had been lawfully obtained, by reason of such irregularities of assessment of damages and benefits,— but had

abandoned all proceedings for the lawful condemnation of lands for the street by a valid assessment of damages and benefits; for the court says: "But, while recognizing this right, it would be manifestly vexatious to expose the city to suits for money collected on a void assessment of this kind, when there is no intention to abandon the improvement;" and, further, "failing in that time [four years] to originate a *new assessment*, and showing no reason for the neglect, is sufficient evidence in this case to show an abandonment."

It is intimated very strongly, if not directly decided, that the plaintiff ought not to recover the money he had so paid on the void assessment until a reasonable time had elapsed for making a valid assessment, and proceeding with the improvement; the court holding that such a suit, even for a void assessment, "would be manifestly vexatious," without such evidence of abandonment. It can be readily seen that this case is no authority for a proceeding to set aside a valid assessment of benefits, and a sale of the property, where all the proceedings of condemnation have been regular, on the ground that the officers of the city had diverted the public grounds obtained thereby to a foreign use, but rather an authority against it. But this opinion has been prolonged by courtesy to the learned counsel of the respondent, on the hypothesis that the lease of the second ward park for so long a time for mere exposition purposes was a valid one. It may be a question of fact whether such use is inconsistent with its use for a park, such use being to some extent public. If, however, as seems to be implied by the complaint, such use is entirely inconsistent with the use of these grounds for the purposes of a public park, and destructive of such use, then certainly such a diversion of the grounds is unlawful, and a lease for that purpose void. The officers of the city could no more divert the park to other uses than strangers or other intruders, and could confer no right by lease or other contract upon others to do so, without legislative authority at least,

and such authority is not asserted in this case.   2 Dillon on Mun. Corp., § 651; *Comm. v. Rush*, 14 Pa. St., 186; *Comm. v. Alburger*, 1 Whart. (Pa.), 469.   The public cannot lose its right to the use of these grounds for a park by mere *non-user*. Angell on Highways, § 321.   Persons who have purchased and improved their lots facing upon a public square, lawfully dedicated to the public use, may enjoin its incumbrance or diversion.   *Rutherford v. Taylor*, 38 Mo., 315.   Owners of lots adjacent to a public square, and interested in having it actually applied to the use to which it was originally devoted, may restrain by injunction its diversion to other uses.   *Williams v. Smith*, 22 Wis., 594.   It would seem that the owners of lots lying so near a public square as to be specially benefited thereby, and whose benefits have been assessed and paid to aid the city in procuring title to the same for such purpose, by the principle of the above cases could enjoin its diversion to other uses.   We think the demurrer to the complaint should have been sustained.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.