PETTITT *v.* THE MAYOR AND COUNCIL OF MACON *et al.*

1. Where, during the progress of a cause then on trial, all the parties in open court, upon mutual consent, agree to confine the matter in controversy to a single issue which is plainly and distinctly made in the pleadings, and the court upon this agreement proceeds with the trial, neither party can thereafter, during such trial, *as a matter of right* amend the pleadings by the introduction of other and distinct issues, even though such issues might have been, in the first instance, proper and germane to those presented in the original pleadings.  The enforcement of such agreements is necessarily within the discretion of the presiding judge, and unless such discretion is abused, this court will not interfere.
2. The mere appropriation by a municipal corporation to a particular public use of a part of its own public domain, is not of itself such an irrevocable dedication of such property to such particular use as will prevent a subsequent appropriation of the same property to such other public use as the interests of the public may thereafter require.  In order for such an appropriation of property to amount to an irrevocable public dedication, there must be, upon the part of the public, such user under the first appropriation as

that a change in use will operate as a serious injury or inconvenience to the general public. Practically a similar result would arise in favor of an individual citizen where there had been such investment by him, upon the faith and strength of the first appropriation, as that a change of use would operate as a fraud upon him and impair his rights of property thereunder vested. In the latter case, while as to him a dedication in its strict sense might not exist, an estoppel would arise in his favor and bar the right of the municipal authorities, without compensation, to change the use.

3. To justify the grant of an injunction at the suit of a private citizen seeking to enjoin the authorities of a municipal corporation from making a change in the use to which a part of its public domain has been previously devoted, it must appear, either that there has been an irrevocable public appropriation to the particular use, or that he or his privies in estate, upon the faith of such previous appropriation, had so dealt with the public authorities with reference thereto as to have acquired a vested right in the maintenance of the then existing status, and further that, having such right, the damage which would flow to him from a change in the use to which such property was first devoted would be both substantial and irreparable.

March 2, 1895.

Petition for injunction. Before Judge GRIGGS. Bibb superior court. November term, 1893.

H. F. STROHECKER, for plaintiff.

MINTER WIMBERLY, HILL, HARRIS & BIRCH and DESSAU & HODGES, for defendants.

ATKINSON, Justice.

It appears from the record in this case, that under an act of the legislature passed many years ago, the title to a large body of property lying within the city of Macon, and known as the Macon reserve, was vested in that city, and in dealing therewith large discretionary powers were conferred upon the mayor and aldermen. It appears that upon this tract of land the city authorities located a public cemetery, known as Rose Hill Cemetery; that in the year 1854 an ordinance was passed providing as follows: "That portion of the city common bounded as follows, be set aside and perpetually reserved

free and exempt from lease or sale forever, to wit: commencing at the upper end of Wharf street adjoining Dr. Pye's lot, known as lot No. 17, between Orange and College streets, thence running down Wharf street to the intersection of Franklin street, thence along Franklin street to the intersection of Rose street to a branch, thence along the line and run of said branch to the Ocmulgee river, on the line of said river until it strikes the line of Rose Hill Cemetery, thence along the line of Rose Hill Cemetery until it reaches Orange street, thence to starting point." The second section of the ordinance provides that: "The front line of said cemetery as now laid off shall be perpetual as the boundaries thereof, and that no interments shall be allowed in said reserve." All conflicting ordinances were repealed. After the passage of this ordinance, the mayor and council sold certain portions of this public reserve to private individuals, upon which the latter constructed dwellings and made other improvements. The portions so sold were regularly divided into lots, but did not extend to the boundary as established by the ordinance above recited. In the year 1893 the mayor and council were proceeding to extend the boundaries of the cemetery beyond its original limits so as to include a portion of the premises covered by the ordinance in question, and in addition thereto, they made a concession to certain individuals authorizing them to construct upon the land so reserved to the public use a certain line of railway. A petition was filed in the superior court, seeking to enjoin this intrusion by the city authorities upon the property thus reserved. It was alleged that the ordinance in question amounted to a dedication of this particular property to a public use inconsistent with the servitude then sought to be imposed upon it, and that to permit this to be done would result in a great decrease in the value of the property so sold by the city to the

petitioners, and render it less desirable for the purposes for which it was purchased. When this cause came on to be tried, an answer was filed by the respondents, alleging a settlement of the matter in controversy between the parties, and submitting to the court for its approval an agreed decree. The present plaintiffs were then, by a cross-bill filed as a part of the answer, made parties respondent, and the parties being all before the court, it was agreed that the only question which should be submitted was, as to whether a final decree should be entered, enjoining the city from thereafter making encroachments for cemetery purposes upon the land reserved beyond the boundary stated in this agreement. It is stated in the bill of exceptions, that it was agreed between all the parties to the case that the inquiry should be limited to this question. Thereafter these plaintiffs in error offered an amendment, attacking the power of the mayor and council to encroach at all for cemetery purposes upon any portion of the premises, alleging fraud on the part of the mayor and council in making the contract allowing the construction of a railroad upon such premises, and denying the power of the municipal authorities to appropriate any portion of the reserved property to railroad purposes. This amendment was demurred to generally, and was disallowed by the court, and to its disallowance exception was taken by the plaintiffs in error. Evidence was submitted upon the trial of the case, which was conflicting, as to whether the property of the petitioners would be damaged at all, and if so, how much. There was no suggestion that the damages contemplated, even if they accrued according to the contention of the plaintiffs in error, would be incapable of estimation in money or would be otherwise irreparable. The court directed a verdict in accordance with the agreement of the parties touching the boundary, and exception was taken to this instruction to the jury.

1. Upon the question of practice involved in the disallowance of the proposed amendment, it occurs to us that this was a matter which rested in the sound discretion of the presiding judge. In dealing with that question, he was administering what, for a better descriptive term, might be called the police power of the court. The parties, by solemn agreement in open court, had limited the judicial inquiry to a particular question. They could not, as a matter of right, by an amendment, enlarge the scope of that inquiry. We do not mean to say that where the substantial justice and equity of the case required an extension of this inquiry, the circuit judge would not have had the power to allow the amendment proposed. In the exercise of his discretion he might have allowed it. He was not bound to do so, however; and this court will not control his discretion in refusing so to do.

2. The ordinance in question, declaring that the original boundary of the cemetery should not be extended beyond a given point, and that the property included in the ordinance should be thereafter reserved to public use, was not, in its strict legal sense, a dedication of the property at all. According to its strict significance, a dedication involves only the devotion by a private person of his property to a definite public use. It is a devotion by a private person of his own property to public uses inconsistent with the exercise thereafter by the owner of a personal dominion over the same. In this case, the property claimed to have been dedicated was vested in the first instance in the Mayor and Council of the City of Macon for public uses generally, and the mere appropriation by the public authorities of this public property to an indefinite public use, is no such irrevocable abdication by the public authorities of all their power and control over the same as will prevent the subsequent appropriation of the same property to such

other public uses as the interests of the public may thereafter require.   After the ordinance was passed, the property was still held to the public use, and it is doubtful whether the mayor and council then in office would have the power by ordinance so to limit its control over the public property so held by it as to deprive it or its successors of the right thereafter to appropriate the property to some other use which the interests and convenience of the general public might demand.   If the mayor and council, being the owner of land, had subdivided such property into streets and lanes and parks, reserving such streets and lanes and parks and appropriating the same to that definite public use, and thereupon sold the property abutting thereon to private individuals with reference to such streets, lanes and parks, and the purchasers of such lots had invested their money upon the strength and faith of such appropriation, while in the latter case a dedication in its strict technical sense might not exist, an estoppel would arise in favor of the purchasers as against the municipal authorities; and even then such public property would be still subject to the exercise of the right of eminent domain, and upon just compensation, the city authorities would be authorized to impose thereon, under appropriate legislation, any other additional servitude necessary for the general welfare of the public.   This doctrine is within the principle of the *Franklin* case, reported in 12th *Ga.* p. 239.

3. To justify the grant of an injunction at the suit of a private citizen against the municipal authorities, restraining them from making a change in the use to which a part of the city's public domain has been previously devoted, it must appear that there has been an irrevocable public appropriation to a particular use, which does not appear in the present case, or that he or his privies in estate, upon the faith of such previous appropriation, had so dealt with the public authorities with

reference to the special use to which it had been devoted, as to have acquired a vested right in the maintenance of the then existing status. This much would be necessary in order to maintain an action for damages to his property resulting from such a change in the public use; but where he seeks an injunction to prevent an impending invasion by the municipal authorities of his alleged private right, it must be affirmatively shown that the damages which would result to him from the change in the use to which the property was at first devoted, would be both substantial and irreparable. We do not think in the present case that the evidence makes such a case of appropriation to a particular public use as would authorize the maintenance of an action at all; and even if there were such an appropriation, there is no evidence that the injury would be irreparable in damages, either because of inability on the part of the city to respond, or because the damages claimed were incapable of computation in money. Necessarily, in dealing with public property, each succeeding municipal council must exercise a wide discretion in meeting the varied requirements of the public, as time and circumstance may change the conditions under which this property is to be enjoyed. It was little dreamed, at the time the title to this property was first vested in the mayor and council, that it would ever become necessary to impose thereon a servitude in favor of a railroad company, in order that it might exercise a right of way over such property. Yet, a case involving principles similar to those stated here actually arose in connection with the identical property in question. The mayor and council had solemnly dedicated what is known as Rose Hill Cemetery as a place for the burial of its dead; yet thereafter, though injunction was sought by lot-owners in the cemetery, the grant to a railroad company of the right to construct its roadbed through a portion of the

land so reserved to public uses as a public cemetery, was upheld by this court, the construction of the railroad itself not involving an intrusion upon that part of the cemetery actually devoted to burial purposes. See *Wood* v. *Macon & Brunswick Railroad Company*, 68 *Ga.* 539. Upon streets laid out in cities, in order to meet the exigencies which from time to time arise and to promote the convenience of the public, it is not unusual to grant rights of way to street railway companies through the same. No abutting lot-owner can be held to have acquired such an interest in the public streets as would authorize the grant of an injunction to prevent this public improvement. It may result possibly in some inconvenience to the individual, but the interest of the general public is being subserved thereby. If he suffers damage as the result of this improvement, his right is not to arrest its progress by injunction, but he is remitted to his action for damages, if any right of action accrues to him at all. We conclude, therefore, that, upon the admitted testimony in the record, the court committed no error, of which these plaintiffs in error can complain, in directing a verdict limiting the finding of the jury to the matters covered by the agreement made in its presence, and denying the injunction, except as therein provided.          *Judgment affirmed.*