BLANTON *et al. v.* MERRY, mayor, *et al.*

A court of equity will not, at the instance of a taxpayer as such, enjoin an ultra vires municipal act the doing of which can in no wise injuriously affect him.

Argued June 27,—Decided August 9, 1902.

Petition for injunction. Before Judge Spence. Mitchell superior court. April 1, 1902.

*J. D. McKenzie* and *W. A. Covington,* for plaintiffs, cited 113 *Ga.* 779; 109/373; 103/110; 71/160; 69/544; 49/477; 43/55.

*Sam. S. Bennet* and *J. H. Scaife,* for defendants. Dispensary officers governmental: 54 *Ga.* 469; 65/389; 95/129; 103/695; 106/107; 113/241; 115/266. Ordinance valid: 73 *Ga.* 184; 89/739; 103/115, 698; 110/433; 113/238, 780; Acts 1880— 81, p. 445, secs. viii, x; Acts 1882—3, p. 307, secs. v, xiv; Acts 1889, p. 1368; 24 Am. R. 758 and cit.; 1 Dill. Mun. Corp. § 245; 17 Am. & Eng. Enc. L. (1st ed.) 236; 11 Id. 441.

FISH, J.   S. R. Blanton and five other citizens of the town of Pelham sought to enjoin H. H. Merry, the mayor, and the four aldermen of the town from operating a dispensary therein. The petition alleged that the defendants were operating such a dispensary, in pursuance of an ordinance adopted by them, as mayor and council of the town, in February, 1902; that they had no power or authority, under the charter of the town, or under any law, to pass such ordinance or "to embark said municipality in the business of buying and selling such liquors or contracting debts" for the same which would be binding on the town; and that all their acts in relation thereto were, therefore, void, and "that said acts are against public policy and morals and involve the useless and unlawful use [and] jeopardy of the funds and credit of the said town." The interlocutory hearing was had on an agreed statement of facts, from which we extract as material the following: The ordinance in question provides for the election by the mayor and council of three dispensary commissioners to superintend the operation of the dispensary; that the commissioners shall elect one of their number as treasurer, who shall give bond payable to the board of education of the town; that the commissioners shall elect a dispensary manager, who shall be subject to their orders, rules, and regulations for the

operation of the dispensary; that the manager, under the directions of the commissioners, shall establish and maintain in the town a dispensary for the sale of intoxicating liquors, the funds from the sales thereof to be daily deposited with the treasurer; that the dispensary shall be maintained and operated from the profits of the sales of liquors, and in order to pay taxes and to purchase the first stock therefor, and to meet other expenses incurred in the establishment and maintenance of the dispensary, the manager may, under the direction of the commissioners, or otherwise, incur debts and pledge the future profits of the dispensary to secure the payment thereof, but shall contract for such payment in no other way whatever; that all bills incurred in the establishment and maintenance of the dispensary shall be paid out of the profits thereof; that no liquor shall be drunk in the building or on the premises where the dispensary shall be located; and that the dispensary shall not be opened before sunrise, and shall be closed by six o'clock, p. m., during the months of October, November, December, January, and February, and at sunset during the other months of the year; that the liquors shall be sold in sealed packages only; that the manager shall make a monthly report to the commissioners and to the board of education, showing the financial condition of the dispensary; that the books of accounts and all other papers connected with the dispensary shall at all times be open to the inspection of the public; that the commissioners shall quarterly or monthly set aside as profits all money in the hands of the treasurer that can be taken from the business without embarrassing its continuance, and file with the treasurer a certificate showing the amount of such profits thus set aside, and the treasurer shall thereupon pay such profits to the chairman of the board of education of the town, and such board shall use one half, or so much of the profits as may be necessary, to pay the salaries of the teachers in the public schools of the town and the remainder of the profits shall be set aside and used for the erection of suitable school buildings, for the repair and maintenance of the same, and to provide furniture, fuel, lights, maps, globes, etc., for such public schools.

All the officers provided for in the ordinance were elected and qualified as therein required. A supply of spirituous and intoxicating liquors was purchased, a storeroom rented, and a dispensary opened, which was being operated in the town, in accordance with

the ordinance, at the time of the filing of the petition.   The liquors were bought on a credit, to be paid for, as all other debts incurred in the operation and maintenance of the dispensary, only out of the profits arising from the sale of said liquors; and none of the funds of the town of Pelham have been appropriated or used in the establishment or maintenance of such dispensary, or for the buying or selling of any of such liquors, or for the renting of any storeroom, or for the employment of any salesman or agent for the conduct of the dispensary, or for said sale, or for anything connected with the dispensary; nor has any such use of the funds or credit of the town of Pelham been authorized or threatened.   The court refused to grant an interlocutory injunction, and the plaintiffs excepted.

1. There was no error in refusing the injunction; for, granting, as the plaintiffs claimed, that the defendants, as the mayor and councilmen of the town of Pelham, had no power, under the charter of the town or under any law, to adopt the ordinance in question, or to legally operate the dispensary in the town, the plaintiffs, in their capacity as citizens and taxpayers, were not entitled to the injunction sought, for the reason that it was not shown that they would sustain any damage in consequence of the operation of the dispensary.   *Reid* v. *Eatonton,* 80 *Ga.* 755; *Peeples* v. *Byrd,* 98 *Ga.* 695, and authorities there cited.   Plaintiffs admitted on the hearing, as we have seen, that the dispensary was being operated without any cost whatever to the town and without any possibility of the town ever becoming indebted in any way for its operation. There is nothing in the case of *Barnesville* v. *Murphey,* 113 *Ga.* 779, relied on by plaintiffs in error, in conflict with the ruling we now make, for there certain citizens and taxpayers of the City of Barnesville sought to enjoin the municipal authorities thereof, not only from operating a dispensary, but also from paying bills amounting to several thousand dollars, which divers persons claimed were due to them by the municipality for liquors sold and delivered to the city and used in conducting the dispensary.   The persons holding such claims against the city were parties defendant, and it was sought to enjoin them from collecting their claims.   Plaintiffs in that case were liable, as taxpayers, to be forced to pay their proportion of these claims, if they should be held to be valid and binding claims against the city.   This is the essential feature wherein that case differs from the one in hand.

Counsel for the plaintiffs in error contend in their brief that the sale of intoxicating liquors in the town of Pelham, as shown by the facts contained in the record, is a public nuisance which any private citizen of the town has a right to resort to a court of equity to enjoin. We will not stop to discuss here whether this contention is sound or unsound; for a mere reading of the plaintiffs' petition will suffice to show that it was based solely upon the theory that the acts complained of were ultra vires acts by the municipal authorities, which the plaintiffs, *as taxpayers* of the municipality, had the right to enjoin, and that it was not predicated, either in whole or in part, upon the theory that the "dispensary," the operation of which they sought to enjoin, was a nuisance. The acts complained of are not alleged to constitute a nuisance, nor is there anything in the petition from which it can be fairly inferred that the plaintiffs, in their capacity as private citizens, were seeking to enjoin a nuisance.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*