*Curry & Curry,* contra.

# CITY COUNCIL OF AUGUSTA *v.* RICHMOND COUNTY.

No 9517.  FEBRUARY 15, 1934.

*J. Paul Stephens,* for plaintiff in error.

*Pierce Brothers,* contra.

BECK, P. J.  Richmond County, through its board of commissioners of roads and revenues, brought a petition against the City Council of Augusta, seeking a decree that it be enjoined from collecting for the use of water by the county at its court-house and jail. After a hearing, the court rendered judgment granting the injunction, and the defendant excepted.

This case is largely predicated on an act of the legislature passed in December, 1820, the title of which recites that it is "to vest the government and regulation of the court-house and jail of Richmond County in the Mayor and City Council of the City of Augusta, and appointing them sole commissioners of the court-house and jail of Richmond County. The preamble of said act is in part as follows:

"Whereas the new court-house or city hall of the City of Augusta and the new jail of the County of Richmond have been built on lots belonging to and within the jurisdiction of the chartered limits of the City of Augusta, and for the most part out of funds of said city," etc. Subsequently there were agreements between the county authorities and the city authorities, and contracts made, and a deed executed, touching and affecting the interests of the municipality and the county in the property in question, and in part intended to affect certain rights. The judge, in granting the injunction, delivered the following opinion: "This is a petition brought by Richmond County against the City Council of Augusta, to enjoin the City Council of Augusta from cutting off water which has been supplied to the court-house of Richmond County for the past forty years or more. The case was submitted to the court upon the petition and answer for its determination. It appears from the petition that under an act of the legislature of the State of Georgia, passed in 1820, the title to the property on which the court-house in Richmond County is located was taken in the name of the City of Augusta, and that subsequently the county and the city entered into an agreement with reference to the joint occupancy of the court-house and grounds; and this continued down until June 30, 1890, when a certain equitable proceeding was instituted in the superior court of Richmond County, in pursuance of an agreement dated June 26, 1890, between William F. Eve, judge of the city court, and ex-officio commissioner of roads and revenues of Richmond County, Georgia, and Robert H. May, mayor of the City of Augusta, which agreement referred to was made the decree of the court; and in one of the paragraphs of this decree it was provided: 'The city council shall furnish all water necessary to run fountains, water-closets, and for all other purposes to the county, free of rent.' In pursuance of this decree the City Council of Augusta, on August 5, 1890, executed to the county a deed to the property in question, wherein it was recited that it was made 'for the purpose of carrying into effect the said decree and in consideration of the sum of ten dollars,' and then conveyed to the county all of its rights in the premises, except it reserved unto itself the right 'to the use and enjoyment of certain rooms in the said city hall as quarters by the police force of the said city, a room for the purpose of holding a recorder's court of the city, and another room for the meeting of the City Council

of Augusta as a municipal body, to which, as set forth in the said verdict and decree of Richmond superior court of June 30th, 1890, reference is made as if the same were again set out and repeated herein.' Under this arrangement the court-house was operated until on the 22d day of July, 1892, when the City Council of Augusta executed another deed to the county to the court-house property and also to the jail. This last deed recited that the property being conveyed was the court-house property, namely, 'the same being the lot of land which has for many years been known as the city-hall lot and is the same described in the deed from the party of the first part to the party of the second part, dated August 5, 1890, under which deed was reserved the use and enjoyment of certain rooms in the city hall for' certain purposes, etc.

"In none of the deeds referred to, however, or anywhere else, was there any mention made that it was the intention of the parties to abrogate that portion of the decree which provided that 'The city council shall furnish all water necessary to run fountains, water-closets, and for all other purposes to the county, free of rent.' So, in pursuance of the agreement referred to, and the decree of the court, which is attached to the pleadings in this case, it appears that the City Council of Augusta has, without interruption, continuously furnished water to Richmond County at the court-house from June 30, 1890, until the filing of this bill; and even in this proceeding there is no effort to have canceled this portion of the decree; and it appearing to the court that the parties to said agreement of June 26, 1890, and the verdict and decree of this court dated June 30, 1890, have so construed it for the past forty-three years as to mean that the furnishing of water to the county at the court-house was a part of the consideration for said agreement and the said several deeds referred to as a covenant running with the land, the court feels constrained to give the same construction as the parties themselves have given to the several writings, and holds that Richmond County is entitled to the relief prayed for in its petition. The courts have time and again held that neither party can complain of a court giving the same construction to a contract that the parties thereto have placed upon it, especially when there is nothing contrary to public policy in doing so. To this end, therefore, it is ordered and decreed by the court, that the City Council of Augusta be and it is hereby restrained and enjoined from cutting

off the water supply at the court-house in Richmond County, Georgia, or from taking any other steps to enforce the collection of any water rents from said Richmond County, as prayed for in said petition."

We can not concur in the judgment rendered by the court below. We do not think that the municipality could make a binding contract to furnish water free of charge for an indefinite time in the future, for the purposes mentioned in the contract referred to. The decree taken in the case, largely relied upon by the defendants in error as establishing the agreement referred to, was a mere consent decree in effect ratifying that agreement. The agreement made in reference to furnishing water without charge on the part of the city was ultra vires, and could not be enforced as against subsequent councils of the municipality. We do not think that the principle applying to covenants running with land is applicable in this case. To lay down any other principle than that announced would be to lay down a rule repugnant to more than one well-considered decision rendered by this court. In *Horkan* v. *Moultrie,* 136 *Ga.* 561 (71 S. E. 785), it was said: "A council of a municipality can not make a binding contract by which it undertakes to obligate the municipality to furnish 'free of charge,' for an indefinite time in the future, sufficient water for the closets in a given building situated within the corporate limits, in consideration of the owner of the building allowing the municipality to lay its sewer through his land. . . Such a contract, being ultra vires and void, could not be ratified by the continued use, under the contract, of the sewer through the land by the municipality, nor would the benefit thereby received estop it from subsequently setting up the invalidity of the contract." In the opinion Chief Justice Fish said: "We have found no case that would tend to support a contract made by a city council in behalf of the municipality to furnish water indefinitely to one of its citizens in consideration of his permitting it to lay a sewer through his land. Succeeding councils would necessarily have the power, we think, to change the water rates from time to time as circumstances might require or justify, in order to obtain sufficient revenue to maintain its waterworks system on the one hand and on the other in order to serve all its patrons at reasonable rates and on equal terms. To allow one council to legally bind the city by a contract of the kind here in question might so tie the hands of its

successors as to result in great injury to the municipality and to the public. . . Power in a municipality of making and changing, by ordinance, water rates from time to time, whenever necessary to protect the city and its revenues and to enable it to furnish to all on equal terms and at reasonable rates, is a legislative or governmental power, and therefore can not be legally bargained or bartered away by one council so as to forever deprive succeeding councils of the right to exercise it."

In *Hall* v. *Calhoun,* 140 *Ga.* 611 (79 S. E. 533), the case of *Horkan* v. *Moultrie* was referred to; but there was no intimation that the ruling in the *Horkan* case was not sound, and the *Hall* case was differentiated from the former case on its facts. In *Neal* v. *Decatur,* 142 *Ga.* 205 (82 S. E. 546), Mr. Justice Atkinson, who rendered the opinion of the court, in ruling upon one of the controlling questions in this case, restated the rule in the *Horkan* case and adhered to it. Other cases might be cited recognizing as sound the principle stated. But in the present case there is an additional reason for the conclusion which we have reached. On July 22, 1892, the City Council of Augusta, for a valuable consideration, executed to the County of Richmond a deed to the court-house and also the jail property, in which it conveyed all interests that it had in the property in question here, the recital contained in the deed being, "The intention hereof being to surrender every right reserved under the provisions of said decree and under the said deed and vest in the County of Richmond in fee forever the said lot of land with all improvements and appurtenances thereunto belonging." In this deed no reference is made to furnishing water; but it is significant that while it does not agree to continue to furnish the water free—an agreement which was made while it had an interest in the property, this was the final transaction between the county and the municipality upon the subject of ownership of the lot upon which the court-house and jail were built; and the omission to write any stipulation in this last deed as to furnishing water when the city withdrew from the court-house entirely is indicative of its purpose not to furnish water further free. It is true that in this deed the city conveys all rights and appurtenances to the county; but flowing water passing through the pipes and mains into the buildings should not be construed as one of the appurtenances to the building. Moreover, in this deed we find the following clause: "The intention

hereof being that from August 1st, 1892, the care, management, and inspection of the same is assumed by the county authorities who are to have and exercise all power and authority over the same in conformity to the laws of this State and as if the said act of December 13, 1820, had never been enacted."

It follows from what we have said that the judgment granting the injunction must be *Reversed. All the Justices concur.*