18829. NORTON *et al. v.* CITY OF GAINESVILLE *et al.*

ARGUED JANUARY 11, 1955—DECIDED FEBRUARY 16, 1955.

*R. W. Smith, Jr., Johnson & Johnson, Hammond Johnson,* for plaintiffs in error.

*C. E. Smith, Jr., Jeff C. Wayne, Howard T. Overby, E. D. Kenyon, Kenyon, Kenyon & Gunter, J. E. Palmour, Jr.,* contra.

ALMAND, Justice. The exception here is to an order sustaining general and special demurrers to an equitable petition brought by W. L. Norton et al., as citizens and taxpayers, against the City of Gainesville, a municipal corporation; named individuals as members of the Gainesville Playground and Recreation Board; Gainesville Lions Railway Company, a purported corporation, and the Gainesville Lions Club, a voluntary association composed of approximately 100 members. The demurrers were filed by only two of the defendants, i. e., Gainesville Lions Railway Company and the Gainesville Lions Club. The petitioners attached as an exhibit to their petition a contract alleged to have been entered into between the City of Gainesville, Gainesville Playground and Recreation Board, the Gainesville Lions Club, and Gainesville Lions Railway Company, whereby the City of Gainesville and its Park and Recreation Board granted to Gainesville Lions Railway Company for a term of 10 years an easement for the construction of a miniature railroad in the city park, "including the construction, maintenance, and operation of tres-

tles, fills, tunnel, station, and other improvements, with a right-of-way of such width as will insure the construction, maintenance, and safe operation of said railroad, in the position and location in said park as is shown by blue print of said miniature railroad right-of-way," with the right of the railway company to extend the lease for an additional term of 10 years upon the giving of 30 days' notice in writing. In this contract, the railway company covenanted to construct the miniature railroad; to float bonds or borrow money to build and complete the railroad; to provide personnel to operate the railroad on such days and during such hours as it may deem profitable; and, after paying its operating cost, to apply all of the net revenue to the retirement of the debt incurred in the construction of the railroad, and when the debt has been fully paid, to pay over to the Park Board one-half of the net profits less current operating expenses and a reasonable reserve for repairs and maintenance, and to pay the remaining one-half of the net profits to the Gainesville Lions Club, the Park Board agreeing to use all profits received from the operation of the railroad for recreational purposes and facilities in the City of Gainesville, and the Lions Club agreeing that it would use all funds derived from the operation of the railroad for charitable purposes.

This contract was attacked as being ultra vires and illegal for several reasons, one being that it was an attempt to lease the public property of the city to private parties for individual gain and profit, and neither the city nor its Park Board had the power or authority under the law to allow the use of the profits from the operation of the railroad by private parties for private use. The plaintiffs alleged that they bought lots on which they have constructed their homes, which face and adjoin the city-park property in Gainesville, which was purchased and dedicated for public-park purposes, and they set out in specific detail how their properties would be affected and injured by the acts complained of in the petition, that is, the noise and disturbance incident to the operation of the miniature railroad. Other specific allegations of the petition relevant to the decision in this case will be found in the opinion.

The first question for decision is, whether or not the City of Gainesville and its Park Board had lawful authority to enter

into this lease contract. The contention of the plaintiffs is that the act of the municipality and its Park Board was ultra vires. Code § 85-410 provides that, where the owner, either expressly or by his acts, dedicates property for public use, and the same shall be used for such length of time that the public accommodation or private rights might be materially affected by an interruption of the enjoyment, said dedicator may not afterwards appropriate it to private purposes. Where a municipality dedicates property to a public use, it inures to the benefit of all who are at the time, or may afterwards become, citizens of the municipality, such dedication being in the nature of an estoppel in pais; and where an attempt is made by the proprietor to revoke it by a sale of the land, the municipality may be enjoined by any person interested. *Mayor &c. of Macon* v. *Franklin*, 12 *Ga.* 239 (5, 6). Where a municipality dedicates property to a public use, it may be put to all customary uses within the definition of the use. Any use which is inconsistent, or which substantially and materially interferes, with the use of the property for the particular purpose for which it was dedicated, will constitute a misuser or diversion. *Brown* v. *City of East Point*, 148 *Ga.* 85 (3) (95 S. E. 962). In *Pettitt* v. *Mayor &c. of Macon*, 95 *Ga.* 645 (23 S. E. 198), a private citizen sought to enjoin the City of Macon from disposing of a part of land which had been dedicated for use as a cemetery. It was there held that the mere appropriation by a municipal corporation to a particular public use of a part of its own public domain is not in itself an irrevocable dedication of such property to such particular use as will prevent a subsequent appropriation of the same property to some other public use as the interest of the public may thereafter require; and in order for such appropriation to amount to an irrevocable dedication, there must be upon the part of the public such use under the first appropriation that a change in use will operate as a serious injury or inconvenience to the general public; and a similar result would arise in favor of an individual citizen where there had been such investment by him upon the faith and strength of the first appropriation that a change of use would operate as a fraud upon him and impair his rights of property there invested. In the latter case, while as to him a dedication in a strict sense might not exist, an estoppel would arise in his favor and bar

the right of the municipality without compensation to change the same.

It is argued by counsel for the defendants that the use of a part of the property on which the railway company will construct and operate the miniature railroad will be for recreational purposes and subject to use by the general public, and none of the profits that the Lions Club may derive from its operation will be used for private gain, but solely for charitable purposes, and therefore that the lease to the railway company does not interfere with the general public use of the property, and that the city and the Park Board had lawful authority, in the operation and maintenance of the park, to make this lease.

The weight of authority is that a municipal park is a public utility, and a portion thereof cannot be leased for a term of years for private gain. 10 McQuillin on Municipal Corp. (3d ed.) § 28.53. There appears from the authorities to be a clear distinction between property purchased by a municipal corporation and held for use by it as an entity, or in its proprietary capacity, and property purchased by the city for the public use and benefit of its citizens. The title and power of disposition of property acquired for strictly corporate purposes and held in its proprietary capacity, are different from its title to property acquired for and dedicated to the public use of its inhabitants. As to the former, the power to dispose is unquestioned, but as to the latter, in the absence of express legislative authority, it is only where the public use has been abandoned or the property has become unsuitable or inadequate for the purpose to which it was dedicated that the city has power to dispose of such property. 3 Dillon on Municipal Corp. (5th ed.) § 1102; Tiedeman on Municipal Corp., § 208. See also *Kirkland* v. *Johnson,* 209 *Ga.* 824 (76 S. E. 2d 396). In Derr *v.* City of Fairview, 121 Okla. 23, (247 Pac. 45), it was held that, where a public park has been dedicated for recreational purposes, it becomes a public utility, and so long as it remains such the city has no authority to lease a portion of the park for a period of 25 years for private gain or profit. In Lincoln Park Traps *v.* Chicago Park Dist., 223 Ill. App. 107 (55 N. E. 2d 173), it was held that a city-park board cannot lease a portion of its lands to a private individual, club, or corporation, where by the terms of the lease the demised land

and facilities located thereon were not available equally to all the people. In Nebraska City *v*. Nebraska City Speed & Fair Assn., 107 Neb. 576 (186 N. W. 374), it was held that a city cannot by resolution grant to any person the use or control of any part of its public parks so as to practically deprive the public from having continued enjoyment of its use, nor delegate the use or control thereof to private individuals or associations. In Gilman *v*. City of Milwaukee, 55 Wis. 328 (13 N. W. 266), it was held that the officials of a city cannot lawfully divert to other uses lands dedicated to use as a city park, nor can they without legislative authority confer the right to do so upon others, by lease or contract, and that citizens who have purchased and improved their lots facing upon a public square lawfully dedicated to the public use may enjoin its diversion. In Board of Park Commissioners of Ashland *v*. Shanklin, 304 Ky. 43 (199 S. W. 2d 721), it was held that the carrying out of proposed contracts between a municipal-park board and a private association for the use of a public park by professional and high school baseball teams, wherein power was given to the lessees to exclude the general public from one of the substantial parts of the park, was properly enjoined. In Williams *v*. Gallatin, 229 N. Y. 248 (128 N. E. 121, 18 A. L. R. 1238), it was held that a park commissioner had no authority to lease space in a public park to a private individual for an exhibition designed to advance the people in methods to lessen the number of casualties and avoiding the causes of physical suffering and premature death. For annotations on the power of a municipality to lease its public property, see 18 A. L. R. 1259, 63 A. L. R. 489, and 144 A. L. R. 498.

We have not found any statutory or charter power which gives the City of Gainesville any authority to lease its public park, or a part of the same, to private individuals. By the terms of the contract between the city, its Park Board, and the other two defendants, the city surrenders for a term of 10 years the control and use of a part of its public-park property to a private corporation, under which lease, and, by reason of the operation of a miniature railroad on the easement granted by the city, the Lions Club, a private organization, will profit. The mere fact that the Lions Club will devote these profits to charitable purposes does not make the use of the park property, on which the miniature

railroad will be constructed, a public use. That benefits may flow to a city in carrying out an ultra vires contract made in its behalf affords no reason for denying appropriate equitable relief to one who attacks the contract as being illegal, and whose rights will be infringed if its terms are given effect. *Coker* v. *Atlanta &c. Ry. Co.*, 123 *Ga.* 483 (4) (51 S. E. 481).

It is argued that the act approved February 1, 1946 (Ga. L. 1946, p. 152) vests in the Park Board of Gainesville authority to make the lease in question. That act, after providing that the governing body of any city may dedicate and set apart for use as a park, playground, recreational center, and for other recreational purposes any lands owned by the municipality, provides for the construction, equipment, and maintenance of the park by making appropriations from general municipal funds, with the authority to establish a recreation board, and such board shall possess all the power and be subject to all the responsibilities granted to the city under the act. There is nothing in this act which grants to the City of Gainesville and its Park Board authority to lease any part of its park to private individuals. The City of Gainesville having no lawful authority to make the lease, its Park Board likewise had no authority to make the same.

We are of the opinion that the lease contract entered into between the parties in this case constituted an unauthorized diversion by the City of Gainesville of property which was dedicated as a park for the use of the general public, and that the contract is invalid as being the result of an ultra vires act of the city and its Park Board.

In view of the foregoing ruling, it is unnecessary to pass upon the other grounds of the petition, which also challenged the validity of the lease contract.

■ The next question is, whether or not the plaintiffs have the right to seek injunctive relief under their allegations. Counsel for the defendants insist that the allegations do not bring the petitioners without the operation of the rule that a court of equity will not, at the instance of taxpayers, enjoin a municipal act the doing of which in no wise injuriously affects them (*Blanton* v. *Merry*, 116 *Ga.* 288, 42 S. E. 211) ; and that the allegations are insufficient, even if the act of the municipality and its Park Board be ultra vires, to show that the plaintiffs will be injured in

any manner by the operation of the miniature railroad in the park.

Though equity will not enjoin the action of a municipal corporation while proceeding within the limits of its lawful power, equity does have jurisdiction to restrain it from acting in excess of its authority and from the commission of acts which are ultra vires. *Wells* v. *Mayor &c. of Atlanta,* 43 *Ga.* 67; *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (2) (36 S. E. 247). The plaintiffs allege in their petition: that the proposed railroad track is within 200 to 300 feet of their respective homes; that they bought their lots and constructed their houses facing and adjoining the park, which at that time was dedicated to and was being used for public-park uses; that the construction, maintenance, and operation of the railroad will be a continuing nuisance, causing them irreparable and constantly recurring damage because of the discomfort by reason of the noise incident to the operation of the miniature railroad, such as the metal wheels running on the tracks, the blowing of whistles and horns, ringing of bells, application of brakes, starting and stopping, and accumulation of a great number of people in automobiles near their property; and that the operation of the railroad would reduce the market value of their homes and make it impossible for them to use and enjoy fully and adequately their property.

In *Pettitt* v. *Mayor &c. of Macon,* 95 *Ga.* 645, supra, it was held that, to justify the grant of an injunction at the suit of a private citizen to prevent a municipal corporation from making a change in the use of a part of its public property, it must appear, either that there has been an irrevocable public appropriation to the public use, or that he or his privies in estate, upon the faith of such appropriation, had so dealt with the public authorities with reference thereto that he has acquired a vested right in the maintenance of the then existing status; and further, that, having such right, the damage that would flow to him from a change of the use to which said property was first devoted, would be both substantial and irreparable. In *Perkins* v. *Mayor &c. of Madison,* 175 *Ga.* 714 (165 S. E. 811), it was held that, on a petition of a private citizen to enjoin a municipality from dismantling an alleged public park preparatory to diverting the property for a purpose inconsistent with its use as a public park,

where the only interest alleged by the plaintiff, suing as a citizen and taxpayer, was an interest in common with the general public, this was an insufficient allegation of his right to bring the action, and that there should be an averment of a particular interest of the plaintiff not shared by the general public. The petition was dismissed on general demurrer.

In our opinion, the allegations of the instant petition are sufficient to entitle the plaintiffs to bring this action, because they sufficiently show that the property sought to be leased had been irrevocably appropriated for use as a public park, and that the plaintiffs, by the defendants carrying out the terms of the lease, would suffer injury and damage not common to the general public. See *Aven* v. *Steiner Cancer Hospital,* 189 *Ga.* 126 (5 S. E. 2d 356), and cases cited on page 146.

■ Error is assigned on the court's ruling in sustaining several special demurrers to the petition. Paragraph 6 (h) of the petition alleged that the construction and operation of the miniature railroad at the proposed location was a violation of the zoning laws of the city. This paragraph was demurred to as not alleging how or in what manner the construction and operation of the railroad would violate any city ordinance. This ground of demurrer was properly sustained.

The other special demurrers attacked the allegations that the construction and operation of the railroad would constitute a nuisance, it being asserted by these demurrers that the allegations of injury and damage were speculative and mere conclusions of the pleader. In our opinion, since the primary purpose of the suit was to restrain the carrying out of an ultra vires act of the city and its Park Board, and not to restrain the maintenance of a nuisance, the allegations to which these special demurrers were directed were not subject thereto. Such cases as *Elder* v. *City of Winder,* 201 *Ga.* 511 (40 S. E. 2d 659), *Powell* v. *Garmany,* 208 *Ga.* 550 (67 S. E. 2d 781), and *Gulledge* v. *Augusta Coach Co.,* 210 *Ga.* 377 (80 S. E. 2d 274), are not in point.

It was error for the court to sustain the general demurrers, and the special demurrers other than the one indicated directed to paragraph 6 (h) of the petition, and to dismiss the petition as amended.

The plaintiffs in error having obtained a substantial modifica-

tion of the judgment of the trial court, it is ordered that the defendant in error pay the costs in the trial court incident to bringing the case to this court, and pay the costs in this court.

*Judgment reversed in part and affirmed in part, with direction. All the Justices concur, except Duckworth, C. J., and Wyatt, P. J., who dissent. Head, J., concurs specially.*

HEAD, Justice, concurring specially. The ruling stated at the conclusion of division 1 of the opinion, and in the corresponding headnote, that the contract entered into between the parties would constitute an unauthorized diversion of property of the City of Gainesville, is correct in result, but not for the reasons stated in the opinion.

The Constitution of 1945, art. VII, sec. VI, par. I (Code, Ann., § 2-5901), authorizes contracts by a city or municipality with a governmental agency or public agency discharging governmental functions for a period not exceeding fifty years. The Gainesville Lions Club is not a governmental or public agency within the meaning of the constitutional provision referred to, and the contract entered into by named individuals as members of the Gainesville Playground and Recreation Board with Gainesville Lions Railway Company and the Gainesville Lions Club violates the rule that one council of a municipality may not by ordinance or contract bind itself or its successors so as to prohibit free legislation in matters of municipal government. Code § 69-202; *Horkan* v. *City of Moultrie,* 136 *Ga.* 561 (71 S. E. 785); *City Council of Augusta* v. *Richmond County,* 178 *Ga.* 400 (173 S. E. 140); *Aven* v. *Steiner Cancer Hospital,* 189 *Ga.* 126 (5 S. E. 2d 356); *Screws* v. *City of Atlanta,* 189 *Ga.* 839 (8 S. E. 2d 16).

The object of all city parks is for the recreation and entertainment of residents and persons within the environs thereof. The charter of the City of Gainesville as amended is sufficiently broad to authorize the operation of a miniature railroad in its public park or parks, and such use would not amount to a diversion of public property, provided the contract and the method of operation were otherwise lawful.

The contract in this case, for a purported term of ten years, is prohibited by the general law of this State, and it is therefore ultra vires and void.