26378. JONESBORO AREA ATHLETIC ASSOCIATION, INC. v. DICKSON et al.

SUBMITTED MARCH 8, 1971—DECIDED APRIL 22, 1971.

514

*Wesley R. Asinof, A. Ed Wallace,* for appellant.

*Hutcheson, Kilpatrick, Watson, Crumbley & Brown, Joe C. Crumbley, Lee Hutcheson,* for appellees.

FELTON, Justice. ■ We must first determine whether or not the City of Jonesboro had lawful authority to enter into this lease contract. The contention of the defendants is that the act of the municipality was ultra vires, hence void, for the reasons that (a) it was an attempt to appropriate to private purposes property dedicated by the municipality for public purposes, and (b) it violated the prohibition of *Code* § 69-202, that "One council may not by an ordinance bind itself or its successors so as to prevent free legislation in matters of municipal government."

(a) "There appears from the authorities to be a clear distinction between property purchased by a municipal corporation and held for use by it as an entity, or in its proprietary capacity, and property purchased by the city for the public use and benefit of its citizens. The title and power of disposition of property acquired for strictly corporate purposes and held in its proprietary capacity, are different from its title to property acquired for and dedicated to the public use of its inhabitants. As to the former, the power to dispose is unquestioned, but as to the latter, *in the absence of express legislative authority, it is only where the public use has been abandoned or the property has become unsuitable or inadequate for the purpose to which it was dedicated that the city has power to dispose of such property.*" (Emphasis supplied). *Norton v. City of Gainesville,* 211 Ga. 387, 390 (86 SE2d 234), citing *Kirkland v. Johnson,* 209 Ga. 824 (76 SE2d 396). See also *City Council of Augusta v. Newsome,* 211 Ga. 899 (89 SE2d 485); *Harper v. City Council of Augusta,* 212 Ga. 605 (94 SE2d 690).

It must first be determined in what capacity, proprietary or governmental, the City of Jonesboro was holding the property at the time of the lease. The original complaint alleged that the property was being used at that time for recreational activities of the junior high school. While this was stricken by amendment and replaced by the allegation to the effect that it was no longer being used by the municipality for public purposes, it does indicate the

possibility that the parties, under the new rules of pleading and practice, can prove whether or not the property had in fact been dedicated to a public use and also whether or not such use had been abandoned at the time of the lease or the property had become unsuitable or inadequate for the purpose to which it was dedicated. While the establishment of recreational systems by municipalities is not mandatory (*Code Ann.* § 69-612.2; Ga. L. 1963, pp. 553, 555), it is in the interest of the health and general welfare. *Code Ann.* § 69-312 (Ga. L. 1962, pp. 140, 143). "In the absence of charter authority to the contrary, the maintenance of a park by a municipality is a governmental function. . ." *Stubbs v. City of Macon,* 78 Ga. App. 237 (2a) (50 SE2d 866). The trial court sustained the defendants' motion to dismiss, indicating that no evidence was heard on the interlocutory injunction hearing. The factual issue of the status of the property when leased must be determined by evidence adduced at a hearing in order for the merits of the plaintiff's claim to be adjudicated.

If it is subsequently proved that the City of Jonesboro had dedicated the property to the public's use, which use had not been abandoned, was there express legislative authority, in the form of statutory or charter power, to lease it to private individuals? It is significant that our General Assembly gave municipalities such power by Ga. L. 1956, p. 22, but specifically repealed that Act by Ga. L. 1958, p. 116. Section 1 of the defendant city's charter (Ga. L. 1919, p. 1067) provides in part as follows: ". . . [T]he said City of Jonesboro created by this Act may . . . contract and be contracted with, . . . make and enact through its mayor and council, such . . . resolutions for the transaction of the business and the welfare and proper government of said city as to the said city council may seem best, *and which shall be consistent with the laws of the State of Georgia* and of the United States, and said City of Jonesboro shall be able by law and is hereby authorized and empowered to purchase, hold, rent, *lease,* sell, exchange, possess and retain in perpetuity, *or for any number of years,* any estate or estates, real or personal, lands, tenements and hereditaments of all kinds whatever, within or without the limits of said city, *for corporate purposes.* They shall have special power *in its corporate capacity* to make all contracts which they may

deem necessary *for the welfare of the city or its citizens; . . ."* (Emphasis supplied). Under the above-quoted portion of the charter, "the municipality, acting in its *proprietary* capacity, would be authorized to rent or lease real estate belonging to it, for any valid and sufficient consideration within the objects of its incorporation." (Emphasis supplied.) *Aven v. Steiner Cancer Hospital,* 189 Ga. 126 (3) (5 SE2d 356). The wording of the charter, however, falls short of authorizing such disposition of property held in its *governmental* capacity for the *public use.* Cf. *McPherson v. City of Dawson,* 221 Ga. 861 (148 SE2d 298). We find no other statutory authority authorizing such disposition. Nor could the operation of the facility by the plaintiff be construed as a public use by a showing that the plaintiff is a nonprofit corporation which may devote any profits from its operation to charitable purposes, or that benefits may flow to the city in carrying out an ultra vires contract made in its behalf. See *Norton v. City of Gainesville,* 211 Ga. 387, 391, supra. Although the lease provided that at least one day a week must be left open for the use of the general public, nevertheless, those who might wish to use it at other times must use it subject to the uses and rules prescribed by the plaintiff *private* corporation or else be denied its use.

The trial court must determine from evidence, therefore, whether or not the property had been previously dedicated to a public use and, if so, there being no express legislative authority to lease it to a private corporation, whether the public use had in fact been abandoned or the property had become unsuitable or inadequate for the purpose to which it was dedicated prior to the lease in 1967. Of course, if the lease is found to be invalid for any of the above reasons, it follows that the defendants cannot then lease the property to other private parties based on the claim that the abandonment of the public use is established by the plaintiff's having leased it and utilized it for a period of time.

(b) We are of the opinion, moreover, that the lease, provided it is found to be authorized under the conditions set forth in (a) hereinabove, does not, *as a matter of law,* violate the prohibition of *Code* § 69-202, that "One council may not by an ordinance [or contract, *Screws v. City of Atlanta,* 189 Ga. 839, 843 (8 SE2d 16)] bind itself or its successors *so as to prevent free legislation in mat-*

*ters of municipal government.*" (Emphasis supplied.) If the property be found to have been held by the city in its *proprietary* capacity, the city was authorized by its charter to lease it, under the authorities hereinabove cited. The case of *Aven v. Steiner Cancer Hospital,* 189 Ga. 126, 139, supra, discusses this rule rather fully. On p. 143 it quotes from *Horkan v. City of Moultrie,* 136 Ga. 561, 562 (71 SE 785) as follows: "The weight of authority sustains the doctrine that a municipal corporation may make a valid contract to continue for a *reasonable* time beyond the official term of the officers entering into the contract for the municipality." (Emphasis supplied). The meaning of § 69-202 was thereby judicially fixed thusly. Although it does not appear from the record how long the term of the defendant city officials extended beyond the time at which they executed the contract, the period of the lease is only 5 years, after which time it can be renewed for only 5 additional years at the lessee's option. This does not appear to be an unreasonable time *as a matter of law,* especially when compared with the 35-year lease held to be invalid in the *Aven* case, supra. While the lease in the *Norton* case, supra, was also for 10 years, the majority seems to base its holding of invalidity upon factors other than the length of the lease, with only Justice Head, in his special concurrence on p. 395, expressing the opinion that § 69-202 was thereby violated. Each case must stand on its own peculiar factual situation. The lease in the instant case, unlike many of those mentioned in *Aven,* supra, provided that the plaintiff lessee was to furnish all of the utilities and physical facilities necessary for the intended use, hence did not obligate the city in any way financially. If the rule of § 69-202 be too rigidly applied, there would be few contracts which municipalities in this State could legally enter into, since contracts, by definition, must be binding, and many of them, to be practical and effective, must extend beyond the existing councils' terms because of the nature of their subject matter. It may be that legislative action is indicated to provide clearer guidelines for contracts with municipal governments, so that the parties thereto might ascertain in advance what periods of time are authorized for contracts without having to either act at their peril or resort to a declaratory judgment action when so contracting. In our opinion, then, the

present lease did not violate the provisions of § 69-202 *as a matter of law,* this being a factual issue to be determined at the interlocutory hearing.

■ If the lease is found to be valid, then what was the effect thereon, if any, of the defendant city's resolution "accepting" the cancellation of the lease purportedly requested by the plaintiff? There is little doubt that the city council *intended* to cancel the lease, as is evidenced by its next recorded resolution immediately thereafter—to offer a lease of the property in question to "both groups," referring to the plaintiff and its aforementioned rival organization. If the defendants' action actually had the effect of canceling the lease, of course, the injunction would not be granted to restrain the already completed act. *Shurley v. Black,* 156 Ga. 683 (2a) (119 SE 618); *Johnston v. McEntyre,* 218 Ga. 793, 795 (130 SE2d 711).

Such is not the case here, however. The lease contains no provision for unilateral cancellation. Since the minutes of the meeting of the plaintiff's board of directors, upon which the defendants are alleged to have acted, show on their face that the motion to request the defendants to cancel the lease did not pass, there was no apparent consent to cancellation on the part of the plaintiff, in which event there was no offer to cancel which defendants could accept. The defendants' action, if based on said minutes, must have been predicated, therefore, upon either mistake or fraud. (It was alleged to have been mistake). In either event, it would be unauthorized and therefore void. If the defendants claim to have based their action on a March 16, 1970, letter, referred to in the minutes of their called meeting but not included in the record in the case, this would be a matter to be raised by them as a defense to the complaint.

*Code* § 69-203 provides that "The council or other governing body of a municipality has a discretion in the management and disposition of its property, and where it is exercised in good faith equity will not interfere therewith." While the defendant city council may have had a discretion with regard to the property prior to its lease to the plaintiff, the lease, if valid, ended such discretion and the defendants were as bound by its provisions as was the plaintiff. "In *Williams v. West Point,* 68 Ga. 816, this

court held: 'A municipal corporation may bind itself by, and cannot abrogate any contract which it has the right to make under its charter.' See also 43 CJ 563, § 888." *City of Summerville v. Ga. Power Co.*, 205 Ga. 843, 844 (55 SE2d 540). "A municipal corporation may be estopped, as right and justice may require, where the act or contract relied on to create the estoppel was within the charter powers of the corporation, although the method of exercising the power was irregular." *City of Summerville*, supra, Hn. 2. The defendant city might be held to be estopped to unilaterally cancel the lease by waiting two and a half years and allowing the plaintiff to put some $25,000 worth of improvements on the property in reliance on the lease.

Even if the plaintiff breached the contract by nonpayment of the rental as defendants contend, this is not a stipulated ground for cancellation in the lease. The defendants' resolution shows on its face, however, that their purported cancellation was not based upon such alleged breach. Even if the defendants had discretion with regard to the leased premises, we cannot say as a matter of law that it was exercised in good faith in the circumstances alleged.

The fact that the complaint does not specifically pray that the defendants' purported cancellation be set aside, would not prevent the trial court from applying this remedy, if it is necessary (we have already held hereinabove that such purported cancellation was allegedly unauthorized, in which event it would be void). *Code* § 37-901 provides that "The superior courts, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, such as the nature of the case may allow or require."

Nor would the fact that the plaintiff has the legal remedy of breach of contract, bar the equitable, injunctive relief sought. "Equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law; but a mere privilege to a party to sue at law, or the existence of a common law remedy not as complete or effectual as the equitable relief, shall not deprive equity of jurisdiction." *Code* § 37-120. A recovery by plaintiff of damages for breach of contract might not fully compensate it for the time, labor and money expended on the

premises to adapt them to its purposes, and it would certainly not provide plaintiff with a comparable tract of land for its use, which, indeed, may not even be available. "Equity will enjoin a municipal corporation, its officers and employees from unlawfully taking private property for a public use." *Harrison v. City of East Point*, 208 Ga. 692 (3) (69 SE2d 85) and cit.; *State Hwy. Dept. v. Strickland*, 213 Ga. 785, 789 (102 SE2d 3) and cit. While the interest here taken was only a leasehold interest, we do not see why the same principle should not be applicable, so as to require the municipality to take it in a manner provided by the lease instrument and the law.

The plaintiff's complaint does not negative its right to recover thereon; therefore, the trial court erred in its judgment sustaining the motion to dismiss.

*Judgment reversed. All the Justices concur.*