A01A0482, A01A0483. FULTON COUNTY BOARD OF EDUCATION et al. v. CITIZENS FOR EDUCATION & THE ENVIRONMENT, INC. et al. (two cases).

(552 SE2d 483)

BLACKBURN, Chief Judge.

In this case involving the sale of a public park for construction of an elementary school, the Fulton County Board of Education ("School Board") and the City of East Point appeal, contending that, on summary judgment, the trial court should have determined that East Point, pursuant to its charter, had the express authority to convey the property in question to the School Board. In a separate appeal which has been consolidated herein for review, East Point and the School Board further contend that the trial court erred by issuing a preliminary injunction preventing them from initiating construction of the elementary school. For the reasons set forth below, we reverse in both appeals.

## Case No. A01A0482

In this case, East Point and the School Board contend that the trial court erred in denying their motion for summary judgment regarding East Point's authority to sell Connally Park to the School Board.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable con-

clusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewed in this light, the record shows that the City of East Point agreed to sell a 27-acre tract of land commonly referred to as Connally Park to the School Board. After hearing about this agreement, a group of concerned citizens who wished to preserve the park property, both individually and as members of Citizens for Education & the Environment, Inc. (CEE), filed a complaint against East Point and the School Board, arguing, among other things, that East Point did not have the authority to sell park land without the citizens' consent and, as a result, the sales contract was ultra vires. In the same complaint, CEE requested a declaratory judgment that the land in question was a public park and asked the trial court to enjoin construction of the proposed grammar school. Thereafter, East Point and the School Board filed a motion for summary judgment, requesting that the trial court find, as a matter of law, that East Point had the express right to sell the property pursuant to its 1972 charter.

After a hearing, the trial court held that East Point's charter did not authorize the sale of Connally Park.[2] Concomitantly, the trial court issued a preliminary injunction against construction on the Connally property. East Point and the School Board now appeal these rulings.

East Point and the School Board contend that the trial court erred by finding that East Point lacked the authority to sell the park property to the School Board. We agree.

As a general matter,

> [t]here appears from the authorities to be a clear distinction between property purchased by a municipal corporation and held for use by it as an entity, or in its proprietary capacity, and property purchased [or held] by the city for the public use and benefit of its citizens. The title and power of disposition of property acquired for strictly corporate purposes and held in its proprietary capacity[ ] are different from its title to property acquired for and dedicated to the public use of its

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] The trial court granted appellants' motion for summary judgment in part and denied it in part. With respect to numerous allegations by CEE that East Point had failed to follow technical procedures in negotiating the sales agreement with Fulton County, the trial court granted appellants' motion for summary judgment. These issues, however, have not been appealed and are not considered in this opinion. Rather, this opinion focuses on the trial court's denial of appellants' motion with regard to their authorization to make the sale pursuant to East Point's charter.

inhabitants. As to the former, the power to dispose is unquestioned, but as to the latter, in the absence of express legislative authority, it is only where the public use has been abandoned or the property has become unsuitable or inadequate for the purpose to which it was dedicated that the city has power to dispose of such property.

(Punctuation and emphasis omitted.) *Jonesboro Area Athletic Assn. v. Dickson*.[3] In this case, there is no contention that Connally Park is no longer used by the public or that it is unsuitable for such use. Therefore, the dispositive question becomes whether East Point has express legislative authority to sell its park lands.

To answer this question, one must look to East Point's charter.[4] Section 6, subsection (6) of the charter provides that "[East Point] shall have the power and authority to rent, lease, sell or otherwise dispose of its park properties or other real estate and personal property, whether held by the city in its ministerial or governmental capacity for a fair and adequate consideration."[5] Thus, on its face, East Point's charter, which was approved and enacted by the legislature, specifically and explicitly gives East Point the power to sell its park property. And, as such, East Point has the authority to sell Connally Park to the School Board.

CEE's argument that the grant of authority under East Point's charter lacks the requisite specificity to sell Connally Park is not availing. CEE contends that East Point's charter does not allow the sale of Connally Park in particular because the legislature could not have intended for the provision to apply to Connally Park. In support of this argument, CEE points out that, although East Point's charter was amended in 1972, it did not acquire the Connally property until 1991, and, as such, the legislature could not have specifically contemplated the sale of the after-acquired property when it granted East Point the power to sell park property. Nothing in our case law, however, supports this conclusion. Here, East Point was granted the specific power to sell its park land without limitation. If the General Assembly wished to except after-acquired property from this authorization, it could have done so. It chose not to include such an exception, however, and we must rely on the plain language of the charter.

Citing *McPherson v. City of Dawson*,[6] CEE also argues that the grant of power under East Point's charter was insufficient because it

---

[3] *Jonesboro Area Athletic Assn. v. Dickson*, 227 Ga. 513, 515 (1) (a) (181 SE2d 852) (1971).

[4] There is no express statutory authority allowing a municipality to sell land dedicated to public use, such as a park.

[5] Ga. L. 1972, pp. 2165-2166.

[6] *McPherson v. City of Dawson*, 221 Ga. 861 (148 SE2d 298) (1966).

failed to indicate that East Point could sell "any and all" park property. This argument, however, misapplies the holding in *McPherson*. In that case, the City of Dawson wished to sell certain property which had been dedicated as a public recreation park and swimming pool. Dawson's city charter stated: "The city council of Dawson shall have the power and authority, to be exercised according to their best judgment and discretion, to sell and dispose of any real property or interest therein owned by the City of Dawson and any fixtures or personal property attached thereto or used in connection therewith." (Punctuation omitted.) Id. Our Supreme Court ruled that "any real property interest" was broad enough to include both property held in Dawson's proprietary capacity as well as public parks. In this case, East Point's charter explicitly states that East Point may sell its *park* property. Unlike *McPherson*, the charter in this case is clear and unequivocal, and *McPherson* provides no authority that East Point could not sell Connally Park simply because its charter says that it can sell its park property but does not say it can sell *all* its park property.

Finally, CEE cites numerous cases concerning the condemnation of public property, arguing, in general, that the procedural requirements associated with eminent domain should be applied to this case. Such cases are distinguishable from this matter, however, as no condemnation is involved herein. Therefore, for all the reasons cited above, East Point has the power to sell Connally Park to the School Board, and the trial court erred in finding otherwise.

### Case No. A01A0483

As we have found that East Point, pursuant to its charter, had the authority to sell Connally Park to the School Board, we also find that the trial court erred by enjoining the School Board from constructing a grammar school on the purchased property.

*Judgments reversed. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 10, 2001 —

*Sutherland, Asbill & Brennan, Judith A. O'Brien, Brian D. Burgoon,* for appellants.

*H. Ed Martin, Jr., Susan M. Garrett,* for appellees.